UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CASE NO. 04-cv-76-HRW

JUDITH ANN LOGAN,                                                          PLAINTIFF,

v.                    **MEMORANDUM OPINION AND ORDER**

MARATHON ASHLAND PETROLEUM, LLC.,                       DEFENDANT.

\* \* \* \* \* \* \* \*

This matter is before the Court upon the Defendant's Motion for Summary Judgment [Record No. 35]. The Court, having reviewed the record and being otherwise sufficiently advised, believes the motion to be well taken.

## FACTS

Plaintiff brought this wrongful termination action in Boyd Circuit Court on April 15, 2004, alleging that Defendant Marathon Ashland Petroleum ("MAP") fired her from her job as a truck driver because she suffers from Multiple Sclerosis. On May 7, 2005, Defendant removed the action to this Court.

MAP hired Plaintiff in May 2001 to deliver gasoline, diesel fuel, jet fuel and kerosene to service stations, bulk plants and airports from MAP's refinery in Catlettsburg, Kentucky. Plaintiff took an extended medical leave of absence in October 2001. Thereafter, in March 2002, she was diagnosed with Multiple

Sclerosis, and MAP terminated her employment on approximately April 7, 2002. Ms. Logan testified that her supervisor, Mr. Odom, stated: "Judy, I can't have someone with MS driving for Marathon." Mr. Odom also told her that he had conversed with another driver, who knew someone with MS who had to retire because she was unable to walk. Thereafter, during several conversations with Plaintiff, Mr. Odom offered to find Ms. Logan alternate employment with MAP as a dispatcher or custodian. However, Ms. Logan did not apply for those jobs, and Mr. Odom never called her again concerning such employment.

Even before her termination from MAP, Ms. Logan began working for her former employer, upon the suggestion of Mr. Odom. Since that time, she has been continuously employed, with the exception of a four to five month period. MAP continues to allow her to drive into its refinery to pick up fuel for her current employer.

In her complaint, filed on April 15, 2004, Plaintiff avers that her condition "in no way impeded her ability to perform all of her duties as a fuel truck driver..." Rather, she alleges that MAP wrongfully terminated her employment because it *perceived* that her condition prevented her from performing those duties. The Court therefore construes her claim as falling under the "regarded as" prong of the

definition of disability within the Kentucky Civil Rights Act ("KCRA").[1] On May 16, 2005, MAP filed the instant Motion for Summary Judgment, arguing that it is entitled to summary judgment because there is insufficient evidence that Plaintiff meets the definition of disability within the KCRA, an essential element of her disability discrimination claim. MAP does not dispute Ms. Logan's factual allegations for the purposes of its motion.

For the reasons set forth more fully herein, the Court concludes that Plaintiff has failed to adduce sufficient evidence to create a genuine issue of material fact as to an essential element of her claim under the KCRA. Accordingly, the Court will sustain the Defendant's Motion for Summary Judgment.

## ANALYSIS

Pursuant to the Federal Rules of Civil Procedure, a defendant may move for summary judgment in its favor as to all or any part of the claims asserted against it by the plaintiff. *See* Fed. R. Civ. P. 56(b). When a party moves for summary judgment, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[1] In her Complaint, Plaintiff also alleges that MAP breached both a verbal and written employment contract. However, Plaintiff does not address the breach of contract claim in her response to Defendant's Motion for Summary Judgment, despite the Defendant's invitation to do so. The Court therefore declines to evaluate these claims.

that the moving party is entitled to judgment as a matter of law." *Cox v. Ky. Dep't of Transportation*, 53 F.3d 146, 149 (6th Cir. 1995) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989)); Fed. R. Civ. P. 56(c).

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he has the burden of proof. *Id.* at 323, 106 S.Ct. at 2552. Once the moving party demonstrates the lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Applying these standards, the Court now turns to the merits of Defendant's Motion for Summary Judgment, wherein it claims that it is entitled to summary judgment because Ms. Logan cannot prove an essential element of her

discrimination claim under the KCRA.[2] In order to establish a prima facie case of discrimination based on a disability, the plaintiff must show, *inter alia*, that she had a disability as that term is defined under the statute (i.e., the Kentucky Civil Rights Act).[3] *Hallahan, supra* at 706, citing *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001). Specifically, the KCRA provides that one must be a "qualified individual with a disability" in order to state a claim for wrongful termination:

> It is an unlawful practice for an employer: (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment..., because the person is a qualified individual with a disability... KRS § 344.040.

The term "qualified individual with a disability" is defined at KRS § 344.030(1) as "an individual with a disability who can, with or without reasonable

---

[2] The plaintiff bears the initial burden of establishing a prima facie case of disability discrimination against the defendant. *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706 (Ky. App. 2004), citing *Hedrick v. Western Reserve Care System*, 355 F.3d 444 (6th Cir. 2004). The Court notes that the Sixth Circuit has created two procedural sets of criteria for establishing a prima facie disability discrimination claim which is based on the use of direct or circumstantial evidence. *Hallahan, supra* at 707. However, the Court finds that "this dual procedural paradigm does not affect the outcome in the current case because both paths require the plaintiff to establish that [s]he is 'disabled' under the statute", which as discussed herein, the Court concludes Ms. Logan cannot do. *Id.*

[3] The Plaintiff must also show that she was "otherwise qualified" to perform the requirements of the job, with or without reasonable accommodation and that she suffered an adverse employment decision because of the disability. *Hallahan, supra* at 706, citing *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001). The Court does not reach those elements of the Plaintiff's prima facie case, as Plaintiff has failed to satisfy the disability prong.

accommodation, perform the essential functions of her position."

The Defendant argues that Ms. Logan cannot claim status as a "qualified individual with a disability" under KRS § 344.030(1) because she was not afflicted with a disability as that term is defined by the Act. The Court agrees. The Act defines disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) having a record of such impairment; or (C) being regarded as having such an impairment. KRS § 344.010(4). Here, Plaintiff asserts that her MS is a disability. The parties agree that her disability discrimination claim is premised solely upon the "regarded as" prong of the definition of disability within the KCRA, as Plaintiff testified that she is not claiming a history of such impairment or that MS has ever substantially limited her as to any major life activity.

To qualify as disabled under subsection (C) of the foregoing definition of disability, a claimant must initially prove that she has a physical or mental impairment. See, 42 U.S.C. § 12102(2)(C). An "impairment" is defined under the ADA (the KCRA is modeled after ADA) as any physiological or mental disorder affecting one or more of certain body systems. The parties do not dispute that Plaintiff's medical condition, MS, amounts to an impairment.

However, merely having an impairment does not mean that Ms. Logan

disabled for the purposes of the KCRA. To the contrary, the "regarded as" prong of the definition of disability also requires a showing that MAP "regarded" Ms. Logan's MS as substantially limiting one or more of her major life activities. The United States Supreme Court has defined major life activities as "those activities that are of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002).[4] The EEOC regulations define "major life activities" are those such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 CFR § 1630.2(i). EEOC regulations further provide that "substantially limits" means that the person is either unable to perform a major life activity that the average person in the general population can perform, or is significantly restricted as to the condition, manner or duration under which he can perform the activity as compared to the average person in the general population. *See*, 29 C.F.R. § 1630.2(j)(1).

In this matter, Plaintiff claims that the defendant regarded her as having a

---

[4] Plaintiff argues that *Toyota Motor* does not apply in this case because it does not involve a job specific limitation or a "regarded as disabled" claim. The Court disagrees with Plaintiff insofar as the applicability of the definition of "major life activity" to "regarded as" claims. It has been held that "while *Toyota* did not address a claim that the employee was regarded as disabled, its analysis still controls..." in a "regarded as" disabled case. *Mack v. Great Dane Trailers*, 308 F.3d 776 (7th Cir. 2002). According to the Court in *Mack*, "[u]nder the ADA, the concepts of 'substantially limits' and 'major life activity' are the same whether the employee is proceeding under a claim that she is actually disabled or regarded as disabled."

substantially limiting impairment in the major life activity of working.[5] However, the Court notes that the Plaintiff must allege the specific facts supporting such a claim and then adduce evidence in that regard. "The issue of whether a plaintiff's impairment substantially limits the major life activity of working, involves a multi-level analysis of the particular plaintiff's job skills and the nature of the jobs he was prevented from performing as well as those he is still able to perform." *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 709 (Ky. App. 2004). Specifically, "[t]he inquiry looks to the specific plaintiff's education level, training, job skills, expertise, and knowledge in relation to his actual and potential employment status." *Id.*, citing *Gelabert-Ladenheim v. American Airlines, Inc.*, 252 F.3d 54, 59 (1st Cir. 2001). A plaintiff's post-impairment work history may also be relevant. *Id.*, citing *Gelabert, supra* at 59; *Pollard v. High's of Baltimore, Inc.*, 281 F.3d 462, 471 (4th Cir. 2002) (obtaining a new job is evidence that an impairment is not substantially limiting).

The EEOC regulations provide that the term "substantially limits" in the context of working "means significantly restricted in the ability to perform either a

---

[5] Plaintiff also argues that the inability to drive a vehicle in general would be considered a substantial impairment from a life activity as well as "working." However, the Court finds, without reaching the issue of whether driving constitutes a major life activity, that there is no allegation or evidence of record that the Defendant regarded Plaintiff as unable to drive a vehicle.

class of jobs or broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 CFR § 1630.2(j)(3)(i) (1998).  The mere "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*  The EEOC regulations further provide that in addition to the usual factors courts consider in determining whether an individual is substantially limited in a major life activity,[6] the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

> (A) the geographical area to which the individual has reasonable access;
>
> (B) the job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs);
>
> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities within that geographical area from which the individual is also disqualified because of the impairment (broad range of jobs in various classes). 29 C.F.R. § 1630.2(j)(3)(ii).

Taking the foregoing regulations into account, the Supreme Court has held that

---

[6] In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." §§ 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

"[to] substantially limited in the major life activity of working, a plaintiff must demonstrate not only that the employer thought that he was impaired in his ability to do the particular job, but also that the employer regarded him as substantially impaired in either a class of jobs or a broad range of jobs in various classes. *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 521-522 (1999).

According to the Defendant, Ms. Logan's allegations and the evidence or record fail to establish that MAP regarded her as precluded from performing more than one particular job, and thus, she cannot show that MAP regarded her as substantially limited in the context of working. Specifically, in her Verified Complaint, Plaintiff does not allege either that MAP regarded her as unable to perform a class of jobs or a broad range of jobs in various classes. Rather, Plaintiff merely alleges that MAP discharged her due to what it perceived to be a disability that would "prevent [her] from doing duties required of her job." She also testified that MAP perceived her as being unable or restricted as to her ability to drive a tanker truck for MAP specifically. The Defendant maintains that driving a fuel truck for MAP, with its attendant duties (loading the truck with fuel, delivering it, and returning the truck, etc.), is not a major life activity as defined by ADA regulations or by the Supreme Court in *Toyota Motor, supra*.

In support of this argument, Defendant cites *Howard Baer, Inc. v. Schave*,

127 S.W.3d (Ky. 2003), *rehearing denied* (2004). In *Howard Baer*, a truck driver who suffered a shoulder injury was not allowed to return to work despite being released to work with lifting restrictions. *Id.* The driver sued, claiming that his employer regarded him as disabled. *Id.* However, the court found no evidence that the employer believed that the employee's lifting restrictions substantially limited him as to any major life activities. *Id.* To the contrary, the evidence merely showed that the company perceived him as not qualified to work as a truck driver for Baer, which was insufficient to state a wrongful termination claim. *Id.*

     Plaintiff concedes that she must demonstrate that MAP regarded her as substantially impaired in either a class of jobs or a broad range of jobs in various classes. However, Plaintiff argues that commercial truck driving, in general, constitutes a "class of jobs" under the EEOC Regulations for the purpose of establishing the major life activity of working. In support of this argument, Plaintiff cites *Black v. Roadway Express, Inc.*, 297 F.3d 445 (6th Cir. 2002).

     Like the Defendant, the Court is unpersuaded that *Black* stands for the blanket proposition that commercial truck driving constitutes a class of jobs. Rather, in *Black*, the Sixth Circuit merely employed methodology urged by Plaintiff and used by the Seventh Circuit in determining classes of jobs – specifically, examination of evidence regarding the training, knowledge, skill and

ability required to perform the work, as well as the geographic area available to Plaintiff.[7] *Id.*

At any rate, there is absolutely no evidence in the record to support Plaintiff's eleventh hour contention that MAP regarded Plaintiff as incapable of performing all truck driving jobs. To the contrary, the record reveals that Mr. Odom not only encouraged Plaintiff to apply for a job as a fuel truck driver with another employer while she was on medical leave from MAP, but that he was aware that Plaintiff was driving fuel trucks for that employer when he terminated her. The fact that Plaintiff is currently employed as a fuel tank driver, and Mr. Odom continues to allow Plaintiff to drive trucks into MAP's refinery to pick up gas for another employer belies Plaintiff's contention that MAP regarded her as being incapable of performing all truck driving jobs.

The foregoing factual scenario is certainly analogous to *Collins v. Yellow Freight Systems, Inc.*, 2004 WL 690138 (6th Cir. 2004) (unpublished). In *Collins*, the Court held that evidence that the defendant employer knew the plaintiff was working for another employer in a job that required strenuous manual labor destroyed any inference that the defendant inaccurately perceived him as unable to

---

[7] Plaintiff has offered absolutely no evidence with regard to these factors, even though she urges the Court to consider them.

work in any job that required manual labor. *Id.* Similarly, in this case, the Court finds that the fact that Mr. Odom knew the Plaintiff was working for another employer as a fuel truck driver destroys the inference that Mr. Odom perceived Plaintiff as unable to work as a fuel truck driver.

In sum, the Court concludes that Ms. Logan's allegation that MAP regarded her as unable to perform the duties associated with driving a fuel truck for MAP is legally insufficient to state a disability discrimination claim under the "regarded as" prong of the KCRA. Further, Plaintiff's allegation that MAP regarded her as being unable to work as a fuel truck driver, in general, is without any evidentiary support and is insufficient to state a disability discrimination claim under the "regarded as" prong of the KCRA. As Plaintiff has presented insufficient evidence to create a genuine issue of material fact, no reasonable jury could find in her favor with regard to these issues.

The Defendant also points out that there is insufficient evidence that MAP regarded Plaintiff as incapable of performing other types of jobs. Specifically, when asked whether MAP regarded her as substantially limited in her ability to perform any function other than driving a tanker truck, Plaintiff responded that "that was the way it looked to her" since Mr. Odom promised to give her another job but never called her. When asked if she had any evidence or reason to believe

that Mr. Odom's failure to call was because he believed her MS made her unable to perform any other job, she replied: "I don't have any – any proof of it except the fact that he said he would call me and he never did."

Despite her testimony, Plaintiff nonetheless avers that she has demonstrated that Mr. Odom regarded her MS as substantially impairing her ability to work as a truck driver for MAP by his attitude about MS and what he perceived as its physical effects, and by his failure to place her in another job. According to Plaintiff, she understood this to mean that Mr. Odom felt she was disqualified for any job with MAP, including dispatch or housekeeping. Plaintiff maintains that even if she is wrong about Mr. Odom's reasons for failing to find her another job, "his attitude about MS clearly demonstrates that he felt she was substantial [sic] impaired from a broad range of jobs."

Defendant replies that Mr. Odom is the person who encouraged Plaintiff to apply for alternate jobs, thereby demonstrating his belief that she capable of performing them. Defendant also points out that there were no job postings for dispatcher or housekeeper positions during the relevant time period in the relevant geographic area. In sum, Defendant maintains that Plaintiff has offered no evidence in support of her contentions.

The Court finds Plaintiff's argument that MAP regarded her as incapable of

performing housekeeping and dispatcher jobs to be without merit. The only evidence Plaintiff has offered in this regard is that Mr. Odom did not call her back. Yet, Plaintiff does not allege that she ever applied for those jobs or that she ever attempted to call Mr. Odom. Further, Ms. Logan admitted in her deposition that Mr. Odom had merely stated that he would look to see if any other type of jobs were available. An affidavit submitted by a MAP human resources' employees reveals that there were no job postings for housekeeping or dispatcher jobs in the area for at least the remainder of the year following Plaintiff's termination. As such jobs were not immediately available, the Court concludes that Mr. Odom's failure to call Ms. Logan about such jobs is insufficient to raise a genuine issue of material fact that MAP regarded Ms. Logan as being precluded from performing those jobs.

 Ms. Logan simply fails to allege or adduce sufficient evidence that the Defendant regarded her as substantially limited in either a class of jobs or broad range of jobs in various classes, or that Defendant perceived her impairment as severely restricting her ability to perform tasks central to daily life. As such, the Court concludes that Plaintiff has failed to create a genuine issue of material fact that the Defendant regarded her as substantially limited in the major life activity of working, as required to state a disability discrimination claim under the "regarded

as" disabled prong of the KCRA.

Accordingly, although the Court concludes that Ms. Logan's MS constitutes a physical impairment for the purposes of the KCRA, it does not substantially limit her in any major life activity, as is required for an impairment to constitute a disability under the "regarded as" prong under the KCRA.

## CONCLUSION

For the reasons discussed herein, the Court concludes that the Plaintiff's evidence fails to establish that she was disabled as defined by the KCRA. As such, Plaintiff cannot state a cognizable disability discrimination claim under the Act, and the Court has no choice but to sustain the Defendant's Motion for Summary Judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

(1) the Defendant's Motion for Summary Judgment [Record No. 35] is **SUSTAINED**; and,

(2) a Judgment in favor of the Defendant shall issue contemporaneously herewith.

This August 4, 2005.



Signed By:
Henry R Wilhoit Jr.
United States District Judge